```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF ALABAMA
                      NORTHERN DIVISION

CHANDA HENRY o/b/o,            :
L.R. HENRY,                    :
                               :
     Plaintiff,                :
                               :
v.                             :          CIVIL ACTION 04-0251-M
                               :
JO ANNE B. BARNHART,           :
                               :
     Defendant.                :
```

                    MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income for children (hereinafter *SSI*). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 20). Oral argument was waived in this action (Doc. 19). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233,

1239 (11th Cir. 1983), which must be supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance."  *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

    Plaintiff was born October 6, 2001.  At the time of the administrative hearing, Henry was ten years old and had completed fourth grade special education classes (Tr. 171-74). In claiming benefits, Plaintiff alleges disability due to Attention Deficit Hyperactivity Disorder (hereinafter *ADHD*) and mental retardation (Doc. 10 Fact Sheet).

    Henry filed a protective application for SSI on March 14, 2001 (Tr. 36-39).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although Plaintiff had severe impairments of ADHD and borderline intellectual functioning, she did not meet or equal the requirements of the Listing of Impairments (Tr. 14-22). Plaintiff requested review of the hearing decision (Tr. 10-13) by the Appeals Council, but it was denied (Tr. 5-7).

    Plaintiff claims that the opinion of the ALJ is not

supported by substantial evidence.  Specifically, Henry alleges that:  (1) The ALJ disregarded the opinions and conclusions of her treating physician; (2) she has met the requirements of Listing 112.05D; and (3) the ALJ did not properly evaluate the functional domains (Doc. 10).  Defendant has responded to—and denies—these claims (Doc. 12).

Plaintiff's first claim is that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of her physician.  Henry specifically refers to her psychologist, Richard Reynolds.  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[1] *see also* 20 C.F.R. § 404.1527 (2004).

On June 28, 2001, Psychologist Richard S. Reynolds had his initial interview with Plaintiff, finding her alert, cooperative, and oriented in all spheres (Tr. 125-30).  She was articulate, her associations were tight, and her thought

---

[1]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

content was logical.  Recent and remote memory were intact though insight and judgment were poor.  Reynolds ruled out ADHD and Oppositional Defiant Disorder and noted a provisional diagnosis of mild mental retardation.  The Psychologist recommended psychological testing, medication treatment, weekly psychotherapy, and weekly patient therapy.  Treatment notes from Behavioral Medicine show that Plaintiff began taking Concerta and that she made gains in compliance, concentration, and attention while her anger decreased; a relapse was noted in September 2001 (Tr. 148-49).  On September 18-19, Henry took several tests, including the WISC-III on which she scored a verbal IQ of 70, a performance IQ of 64, and a full scale IQ of 64 (Tr. 146, 151).  On October 19, 2001, Reynolds indicated that Plaintiff had demonstrated appropriate effort and motivation on the tests and that they were considered valid (Tr. 146).  The Psychologist also noted that Henry's scores on the WRAT were consistent with her IQ scores though those on the Personality Inventory for Children were exaggerated.  Reynolds, on this occasion, diagnosed Plaintiff with ADHD and again suggested a provisional diagnosis of mild mental retardation; he stated that the psychotherapy sessions could be reduced to monthly visits (Tr. 147).  On November 6, 2001, Behavioral Medicine notes indicate

that Henry was doing better with improvements in sleep, attention, concentration, minding, and anger control; Adderall[2] was introduced to Plaintiff's drug regimen because of sleepiness associated with the Concerta (Tr. 145).  Two months later, it was noted that Plaintiff's ADHD was improving as were her grades and mood (*id.*).  Improvements continued to be shown until March 2002 when Henry was said to be stubborn and having anger outbursts (Tr. 144); stubbornness and mild conflicts were also reported in September 2002 though there is little medical evidence reported during this period (Tr. 143-44).

    A consultative psychological exam was performed by Nina E. Tocci which included administration of the WISC-III on which she received a verbal score of 70, a performance IQ of 64, and a full scale IQ of 64 (Tr. 131-33); the Psychologist opined that these results were invalid as Plaintiff appeared to have difficulty with her visual acuity and demonstrated difficulty focusing and concentrating on her tasks.  Tocci found Henry oriented to time, person, and place though she was confused and preoccupied.  Plaintiff's affect was appropriate though "[s]he demonstrated a paucity of speech, thought

---

[2] *Adderall* is an amphetamine used for the treatment of Attention Deficit Disorder with Hyperactivity.  *Physician's Desk Reference* 2395-96 (52nd ed. 1998).

5

content appropriate to mood and circumstances, and a goal-directed thought organization" (Tr. 132).  Tocci indicated that she thought that Henry's vision and attention deficiencies could be corrected.

Fourth grade school records show that although Henry performed poorly in science, social studies, and health during the first two quarters of the year, she improved in both science and health over the last half of the year (Tr. 112). The records further show that Plaintiff passed every class. One of Henry's fourth-grade teachers reported that Plaintiff was mainstreamed for science and social studies though her math, reading, and language classes were modified to accommodate deficiencies (Tr. 93-95).  The teacher further reported that her attention span was very good, her concentration good, and that she sometime excelled.  The teacher noted Henry sometimes required help in reading the material when working independently; she completed her tasks in timely fashion and presented no behavior problems.  She had no problems with communication or gross motor skills.

The ALJ summarized these medical notes, but noted that no medical source established a "firm diagnosis of mental retardation" (Tr. 20).  The ALJ rejected the WISC-III test results reported by Reynolds, noting that the test had been

6

administered by a psychometrist which was not an acceptable medical source (*id.*). The ALJ went on to note that even if the IQ test results were considered valid, "the record demonstrate[d] that the claimant in actuality functions at a higher level;" this conclusion was based on Tocci's findings, Henry's school grades, and the teacher report, which were all accorded great weight (Tr. 20).

The Court finds that the ALJ's conclusion is supported by substantial evidence. The academic records and the report from Henry's teacher indicate that Plaintiff is functioning at a higher level than a mentally retarded child would. Though the ALJ did not specifically state what weight he accorded Psychologist Reynolds, the Court finds that he implicitly rejected any suggestion Reynolds might have made that Henry was disabled. The Court notes, though, that Reynolds never actually stated that Plaintiff was mentally retarded or disabled; additionally, office notes from Behavioral Medicine suggest improvement with medication and psychological counseling. The Court finds that Plaintiff's claim that the ALJ improperly rejected Reynolds's opinions to be without merit.[3]

---

[3]Because of the Court's conclusions as to this issue, the Court finds it unnecessary to address Plaintiff's claim that the ALJ improperly rejected the IQ test results because the test had been

Plaintiff next claims that she meets the requirements of Listing 112.05D. That listing requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 112.05D (2004).

The Court notes that Tocci and Reynolds both administered the WISC-III and that the results were the same. Tocci stated that the scores were invalid while Reynolds found them valid. Again, the Court finds the ALJ's rejection of those scores to be supported by the school grade records and the report of her teacher. Plaintiff is functioning beyond the abilities of a mentally retarded child. This claim is of no merit.

Henry's final claim is that the ALJ did not properly evaluate the functional domains. The Court notes that the ALJ spent only one page of his opinion discussing the domains and was not very specific about which evidence supported his conclusions (Tr. 21). The Court notes, however, that Defendant, in her brief before this Court, has set out very specific evidence from the record which supports the ALJ's conclusions regarding the domains (*see* Doc. 12, pp. 20-22).

---

administered by a psychometrist. The Court agrees with the ALJ's conclusion that Henry was functioning at a level higher academically than the test results indicate.

While the ALJ should have better explained his conclusions, the Court finds it to be, at most, harmless error and further finds no good reason to send this action back so that he can do what Defendant has done here.  This claim is of no merit.

In summary, Henry has raised three different claims in bringing this action.  All are without merit.

Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate order.

DONE this 12th day of May, 2005.

                                            s/BERT W. MILLING, JR.
                                            UNITED STATES MAGISTRATE JUDGE